MURPHY and others, Appellants, v. INDUSTRIAL COMMIS-
SION, Respondent. [Case No. 162.] *
MILLER BREWING COMPANY, Respondent, v. INDUSTRIAL
COMMISSION, Appellant. [Case No. 163.] *

*January 8—January 30, 1968.*

* Motion for rehearing denied, without costs, on April 9, 1968.

706

For the appellants Virginia Murphy, Veronika Monostori, and Catherine Pelt there were briefs by *Charne & Tehan* of Milwaukee, and oral argument by *Irvin B. Charne.*

For the respondent-appellant Industrial Commission the cause was argued by *E. Gordon Young,* assistant attorney general, with whom on the briefs was *Bronson C. La Follette,* attorney general.

For the respondent Miller Brewing Company there was a brief by *T. L. Tolan, Jr.,* and *Samuel J. Recht,* attorneys, and *Brady, Tyrrell, Cotter & Cutler* of counsel, all of Milwaukee, and oral argument by *Mr. Tolan.*

HANLEY, J. The principal issue on this appeal is whether the Industrial Commission has authority under the Wisconsin Fair Employment Practices Act, ch. 111, subchapter II, of the Wisconsin statutes, secs. 111.31 to 111.37, to award back pay to parties discriminated against on account of their sex in the wages paid them.

Sec. 111.32 (5) (a), Stats., defines discrimination as follows:

" 'Discrimination' means discrimination because of age, race, color, sex, creed, national origin or ancestry, by an employer individually or in concert with others against any employe or any applicant for employment, in regard to his hire, tenure or term, condition or privilege of employment and by any labor organization against any member or applicant for membership, and also includes discrimination on any of said grounds in the fields of housing, recreation, education, health and social welfare as related to a condition or privilege of employment."

Sec. 111.36 (4), Stats., makes it unlawful for labor organizations, employees, employers, and employment agencies to engage in discrimination as defined by the subchapter. Sec. 111.36 (3) gives certain powers of enforcement to the Industrial Commission as follows:

"If the commission finds probable cause to believe that any discrimination as defined in this subchapter has been or is being committed, it shall immediately endeavor to eliminate the practice by conference, conciliation or persuasion. In case of failure so to eliminate the discrimination, the commission shall issue and serve a written notice of hearing, specifying the nature of the discrimination which appears to have been committed, and requiring the person named, hereinafter called the 'respondent' to answer the complaint at a hearing before the commission. The notice shall specify a time of hearing not less than 10 days after service of the complaint, and a place of hearing within either the county of the respondent's residence or the county in which the discrimination appears to have occurred. The testimony at the hearing shall be taken down by a reporter appointed by the commission. If, after hearing, the commission finds that the

respondent has engaged in discrimination, the commission shall make written findings and recommend such action by the respondent as will effectuate the purpose of this subchapter and shall serve a certified copy of the findings and recommendations on the respondent together with an order requiring the respondent to comply with the recommendations, the order to have the same force as other orders of the commission and be enforced as provided in ch. 101. Any person aggrieved by noncompliance with the order shall be entitled to have the same enforced specifically by suit in equity. If the commission finds that the respondent has not engaged in discrimination as alleged in the complaint, it shall serve a certified copy of its findings on the complainant together with an order dismissing the complaint."

Sec. 111.36 (3) and (4), Stats., was a legislative response to the decision of the Wisconsin Supreme Court in *Ross v. Ebert* (1957), 275 Wis. 523, 82 N. W. 2d 315, in which the court sustained a demurrer interposed by a labor union to a complaint alleging that the union had denied membership to the plaintiffs on account of their race. The court stated that racial discrimination was not then declared illegal but was merely pronounced undesirable; and the state announced a public policy to encourage and foster employment on a nondiscriminatory basis. The court reached this conclusion because the exclusive "remedy" provided by the statutes was investigation, publicity, and a commission recommendation and because compulsory features were specifically rejected by the legislature on three different occasions: In 1945, when the Fair Employment Practices Act first became law; and subsequently in 1951 and 1955. The court stated in *Ross v. Ebert, supra,* at page 530:

". . . The statute's history up to the last legislative session emphasizes that there is more to contend with here than an inadvertent omission. The principle of compelling compliance with the purpose of the legislation has been three times intentionally rejected. A clearer declaration of a noncompulsory public policy is hard to imagine. . . ."

The Industrial Commission argues that the 1957 amendments to the act invalidated prior legislative history and created a legal right in individuals not to be discriminated against, and that since the constitution of this state in art. I, sec. 9, provides that every person is entitled to a remedy in law for all injuries or wrongs to his person when the law recognizes the injury, the law has implied a remedy.

The commission further argues that administrative agencies have considerable latitude to fashion remedies within the scope of their statutory authority and that this is especially true when the agency is expressly authorized by statute to take such action as will effectuate the purpose of the statute. See 2 Am. Jur. 2d, *Administrative Law*, p. 277, sec. 464. The failure of the statute to include any specific remedy, the argument runs, was the result of a decision by the legislature not to bind the commission to such specific remedy or to the rule of *ejusdem generis.* Underlying this argument, of course, is the proposition that a back pay award would effectuate the purposes of the act.

Miller argues that the legislature was aware of the remedy of back pay, having authorized it in the Wisconsin Employment Peace Act, adopted in 1939 (see sec. 111.07 (4), Stats.), and having refused to enact the Wisconsin Fair Employment Practices Act presently before the court containing a provision for back pay, and having refused to amend the act in 1951 and 1955 to include such a provision. And when the legislature amended the act in 1957 in response to *Ross v. Ebert, supra,* it merely provided that the commission could "recommend such action by the respondent as will effectuate the purpose of this subchapter" and order the respondent to comply with the recommendations, and that any person aggrieved by noncompliance with an order can have it specifically enforced by a suit in equity. Thus, the argument runs, the legislature did not incorporate any of the affirmative remedies in 1957 that it

had defeated in 1955, because it merely intended to provide for the injunctive type of relief sought in the *Ross Case*.

The difficulty with Miller's argument is that it would classify as invalid an order having affirmative characteristics beyond those of a general order to cease and desist discrimination, such as an order to hire, reinstate, or upgrade employment, which, after all, would do little more than end discrimination in the individual case brought before the commission. Clearly, the purpose of the act is not effectuated if the Industrial Commission can do no more than enter an order to cease and desist.

Were the enforcement provision of the act to contain language simply empowering the Industrial Commission to enter orders to effectuate the purposes of the act, we would not hesitate to suggest that the commission has the power to award back pay in the appropriate circumstances. However, the provisions of sec. 111.36 (3), Stats., limit the circumstances in which the commission can enter orders in the first instance. It must first *"endeavor to eliminate* the practice by conference, conciliation, or persuasion." (Emphasis supplied.) Only when it has determined that such efforts have failed may it compel a hearing. Only if *after a hearing* the commission determines that respondent has engaged in discrimination can it make recommendations and order respondent to comply with the "recommendations." In other words, if there is compliance in the first instance, no order can issue.

If back pay is a proper remedy under the statute, it can only be so in situations where the discrimination has been found by the commission after a hearing; and one who voluntarily conforms to the commission's thinking will never be subjected to the penalty, for no one could argue that "endeavoring to eliminate" would allow the commission to condition its judgment that the practice was eliminated on a party's willingness to pay back wages. At the very least, it is difficult to imagine that

the legislature intended to create such a state of affairs. The same infirmity would not be present if the remedy sought by the commission was the cessation of discrimination in the case as presented, by an order to hire, reinstate, or whatever is appropriate to eliminate the discrimination in the future, which kind of remedy, we would suggest, is within the commission's power.

The legislature cannot be said to have destroyed the act's conciliatory aspects, although it has undoubtedly given the Industrial Commission authority to make binding orders. Sec. 111.31 (3), Stats., still declares the public policy of the state to be "to encourage and foster to the fullest extent practicable the employment of all properly qualified persons . . . ." Sec. 111.35 directs the commission to perform various acts of a merely persuasive nature. Under the present state of affairs, we do not think that the legislature's intent was to impose the sanction of a back pay award, but rather to use the conciliatory approach unless and until it fails to produce results.

The Industrial Commission has argued that the mere discontinuance of an unlawful practice does not relieve an administrative agency of the duty to pass on a pending charge of illegality when by the whim of the parties the practice may be resumed (73 C. J. S., *Public Administrative Bodies and Procedure,* p. 435, sec. 116) and that therefore the statute should not be read too literally when it conditions the power to make a binding order on the power to hold a hearing, which, in turn, is conditioned on the failure to eliminate discrimination by conference, conciliation, or persuasion. Undoubtedly, where the commission is not satisfied that the parties will abide by an agreement reached during conciliation prior to a hearing, it need not find the practice has been eliminated. But the statute does so condition the power to make an order and to avoid the language would be

to rewrite the statute. The best solution, perhaps, would be for the commission to fashion some sort of agreement with the party allegedly discriminating to eliminate the likelihood of the discrimination recurring.

Finally, the Industrial Commission argues that the case of *Kenosha County Dept. of Public Welfare v. Industrial Commission,* decided April 30, 1963, by the Dane county circuit court, is authority for awarding back pay in a discrimination case. The decision in that case is not part of the record before the court, and the parties are in dispute as to whether the point was litigated in the court. In any case, one circuit court decision should not be enough to force the legislature to act under pain of having the supreme court declare that decision to be part of the statutory gloss.

Since the commission does not have the authority to award back pay, the question of the union's liability is not reached.

*By the Court.*—Judgment affirmed.

The following memorandum was filed April 9, 1968.

PER CURIAM *(on motion for rehearing).* The Industrial Commission [1] has no authority under the Wisconsin Fair Employment Practices Act, ch. 111, subchapter II, of the Wisconsin Statutes, secs. 111.31 to 111.37, either during or after conciliation or after hearing, to award back pay to parties discriminated against on account of their sex in the wages paid them. Any language to the contrary in our original opinion is there only for purposes of argument and is hereby withdrawn.

Counsel now argues for the first time that it is inconsistent to allow the cease and desist portion of the com-

---

[1] Department of Industry, Labor & Human Relations.

mission's four-part order to stand while affirming the trial court's judgment striking the second portion of the order. Neither in the circuit court nor here was any question raised as to the authority of the commission to enter that portion of the overall order. Our original opinion did not consider that portion of the order and we see no reason for considering its validity on this rehearing.