**Trkula v. South Hills Health System**

C.P. of Allegheny County, no. GD 94-12870.

FRIEDMAN, *J.,* May 23, 1996—

## INTRODUCTION

The captioned case involves alleged discrimination by defendant against plaintiff based on plaintiff's age. Claims under both the federal Age Discrimination in Employment Act and the Pennsylvania Human Relations Act are involved. Both parties agreed that the ADEA claim was to be submitted to the jury and that the PHRA claim was for the court to decide, non-jury.

According to their answers to interrogatories, the jury found there was willful age discrimination and awarded plaintiff $261,606 for the loss of past wages and benefits and $176,004 for the loss of future wages and benefits. In accordance with the ADEA, the past loss was doubled based on the jury finding that defendant's conduct was "willful," resulting in a molded verdict totaling $699,216. Oral argument on the state claim was then held before the undersigned. (Plaintiff has also made a claim for counsel fees which will be decided at a later date, by the court, after receipt of a written motion and answer, with appropriate affidavits attached, and after a hearing, if needed.) The matter now before the court is the non-jury decision of plaintiff's PHRA claim.

## DISCUSSION

In its introductory clause, the Pennsylvania Human Relations Act sets forth its purpose, which is quoted in pertinent part below:

"Section 952. Findings and declaration of policy

"(a) The practice or policy of discrimination against individuals or groups by reason of their . . . age . . . is a matter of concern of the Commonwealth. Such discrimination foments domestic strife and unrest, threatens the rights and privileges of the inhabitants of the Commonwealth, and undermines the foundations of a free democratic state. The denial of equal employment . . . because of such discrimination, and the consequent failure to utilize the productive capacities of individuals to their fullest extent, deprives large segments of the population of the Commonwealth of earnings necessary to maintain decent standards of living, necessitates their resort to public relief and intensifies group conflicts, thereby resulting in grave injury to the public health and welfare . . . and other evils, thereby threatening the peace, health, safety and general welfare of the Commonwealth and its inhabitants.

"(b) It is hereby declared to be the public policy of this Commonwealth to foster the employment of all individuals in accordance with their fullest capacities regardless of their . . . age . . . and to safeguard their right to obtain and hold employment without such discrimination, to assure equal opportunities to all individuals . . . ." 43 P.S. §952

The non-jury claims of the plaintiff are based on alleged violations of the following section of the PHRA:

"It shall be an unlawful discriminatory practice, unless based upon a bona fide occupational qualification, . . . [f]or any employer because of . . . age . . .

to discharge from employment such individual . . . if the individual . . . is the best able and most competent to perform the services required." 43 P.S. §955.

The language of section 955 is in contrast to that of the federal law applicable to the jury's verdict, which is as follows:

"It shall be unlawful for an employer . . . to discharge any individual . . . because of such individual's age." 29 U.S.C. §623.

During preliminary discussions of the Pennsylvania Human Resources Act, the court was concerned about the effect of the reference therein to qualifications, an issue that seemed absent from the black-letter federal law. Defendant consequently briefed this issue and presented it to the court prior to oral argument.

In its brief, defendant contends, incorrectly, that the *elimination* of plaintiff's job slot means that "qualifications are not an issue in this case," and then argues, inter alia, that *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), sets the standards regarding burden of proof and burden of production. Rather than dwelling on the question of whether a defense based on the elimination of a position need not also demonstrate that the discharged employee/plaintiff was *not* the "best able and most competent to perform the services required," the court will simply note that the evidence was undisputed and overwhelming that plaintiff was eminently qualified to perform the "services" of his allegedly eliminated position. Furthermore, defendant adduced no evidence to suggest that any of the employees among whom responsibility for those services was then distributed were better qualified or even as qualified. Therefore, for purposes of the Pennsylvania Human Resources Act, there is *no* evidence that plaintiff was not the "best qualified," and

it is for *that* reason that plaintiff's relative qualifications are not an issue.

Defendant, therefore, is left with its sole asserted defense, that its hospital-wide cost-cutting needs could only be met in plaintiff's department by a "reduction-in-force," which only coincidentally affected two of the three oldest employees in the department. The jury clearly found this a sham excuse and so does the court. The testimony of William Jennings, defendant's president and CEO, was especially evasive and not credible. Similarly, the testimony of Gary Perecko, Paul Lang, and Robert Valesek was also not credible, though for varying reasons.

The evidence presented by plaintiff not only was sufficient to make out a prima facie case of age discrimination, the evidence of the defendant as to its justification for plaintiff's discharge was not at all credible. The court therefore concurs in the jury's determination that defendant discriminated against plaintiff based on age and awards the same past and future lost wages and benefits as did the jury, to-wit, $261,606 and $176,004 respectively.

Plaintiff also sought "[c]ompensatory damages for emotional distress and mental anguish . . . ." (Complaint ¶27(e).) Such damages are available under the PHRA. See *Pennsylvania Human Relations Commission v. Zamantakis,* 478 Pa. 454, 387 A.2d 70 (1978), which states that damages are recoverable for "humiliation and mental anguish."

The court finds that the *manner* of the unlawful discharge was shabby at best and, indeed, rather heartless and cold-blooded. Plaintiff, an admittedly highly-valued employee, after a decade or so of loyal service, was told that his position was eliminated and he was to leave immediately. The post-discharge writings and "as-

sistance" he was given were perfunctory attempts to protect defendant's legal position rather than to assist plaintiff in a difficult time. They only accentuate the lack of humanity and concern that defendant had for its employee. Little or no effort was made to preserve or even to acknowledge plaintiff's dignity or his worth as a human being. The evidence indicates plaintiff was treated, as they say, like dirt. It is true that anyone being discharged would be expected to feel bad, and plaintiff did. No employee of plaintiff's ability and character should ever be made to feel as worthless as defendant treated plaintiff. He was subjected to unnecessary humiliation and suffered more mental anguish than needed to be inflicted. Defendant's conduct is particularly shocking and insensitive given the fact that its supposed raison d'être is to care for human beings in distress. The court therefore awards plaintiff an additional $100,000 as compensation for the excessive humiliation and mental anguish caused by the unlawful discharge itself, as well as by the offensive manner of carrying it out.

As to punitive damages, liquidated or otherwise, the court believes they are unavailable under the PHRA.

## CONCLUSION

The court awards plaintiff the following amounts:

| | |
|---|---|
| Past lost wages and benefits | $261,606 |
| Future lost wages and benefits | $176,004 |
| Damages for humiliation and mental anguish | $100,000 |
| Total non-jury verdict | $537,610 |