**George C. CLARKE, Plaintiff,**

v.

**Jani B. WHITNEY and Tri–
Star Packaging, Inc.,
Defendants.**

Civ. A. No. 95–1144.

United States District Court,
E.D. Pennsylvania.

Aug. 22, 1997.

John L. Senft, Barley, Snyder, Senft & Cohen, York, PA, for Plaintiff.

Lawrence S. Markowitz, Markowitz & Krevsky, P.C., York, PA, for Defendants.

**MEMORANDUM**

JOYNER, District Judge.

On February 27, 1995, Plaintiff George C. Clarke ("Plaintiff") filed a three-count Complaint against Defendants Jani B. Whitney and Tri–Star Packaging, Inc. ("Whitney" and "Tri–Star" respectively or "Defendants" collectively) alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, the Pennsylvania Human Relations Act ("PHRA"), 43 Pa.Cons.Stat.Ann. § 951 *et seq.*, and the Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 Pa.Cons.Stat.Ann. § 260.1 *et seq.* We dismissed the ADA and PHRA claims against Defendant Whitney by Order dated December 12, 1995, *see* 907 F.Supp. 893 (E.D.Pa. 1995), and awarded summary judgment to Defendant Tri–Star on the ADA claim by Order dated July 25, 1996. *See* 934 F.Supp. 148 (E.D.Pa.1996). On September 9, 1996, Plaintiff filed a Second Amended Complaint pleading subject matter jurisdiction pursuant to 28 U.S.C. § 1332. The Second Amended Complaint asserts the PHRA claim against Tri–Star in Count I and the WPCL claim against both Defendants in Count II.

On December 16, 1996, after Whitney failed to appear for her deposition in compliance with this Court's orders dated October 30, 1996, and November 26, 1996, we granted a default judgment against Defendants on the Second Amended Complaint pursuant to Rule 37(b)(2)(C) of the Federal Rules of Civil Procedure. See 169 F.R.D. 623 (E.D.Pa. 1996). We also granted Defendants' initial counsel leave to withdraw his appearance by Order dated this same day. On January 8, 1997, Lawrence S. Markowitz, Esq., entered his appearance as Defendants' counsel and on February 6, 1997, we allowed Defendants to file out of time a Motion for Reconsideration of the entry of default judgment. We denied the Motion for Reconsideration on April 15, 1997, finding that Defendants had failed to offer an adequate explanation for Whitney's refusal to appear for her deposition. All well-pleaded allegations of the Second Amended Complaint are therefore deemed admitted and the only issue that remains for our decision is damages. On April 21, 1997, this Court held a hearing to

determine the damages to be awarded for Plaintiff's PHRA and WPCL claims.[1] The parties submitted their proposed findings of fact and conclusions of law on June 5, 1997, and June 17, 1997, thus this issue is ripe for our decision.

## FINDINGS OF FACT

*The Parties*

1. Plaintiff is an adult individual who resides in Lancaster, Pennsylvania. He was born on February 6, 1935, and is married to Anne B. Clarke ("Mrs.Clarke"). Rec. at 9, 115.

2. Defendant Whitney is an adult individual who resides in Jupiter Island, Florida. She is the owner of Lionel Industries of South Florida ("Lionel") and Tri–Star. *Id.* at 130. She is married to Joel Goldberg ("Goldberg"). *Id.* at 131.

3. Defendant Tri–Star is a Florida corporation with its principal place of business in Palm Beach Gardens, Florida. Defs.' Ex. 10–13, 15. Tri–Star began operating in 1990 as a distributor of corrugated products such as egg cartons to businesses and farms in the northeast and mid-Atlantic region. *Id.* at 131, 133, 153. Lionel engages in the same business in states south of Virginia. *Id.* at 131.

*Tri–Star's Business Record*

4. Tri-Star commenced operations in 1990. That year, it earned gross sales of $1,030,740, but suffered a net loss of $94,455. *Id.* at 135; Defs.' Ex. 10.

5. Despite an increase in gross sales to $3,908,178 in 1991, Tri–Star's net profit was only $19,318 for the year. Rec. at 135–36; Defs.' Ex. 11.

6. In 1992, Tri–Star reported gross sales of $3,730,114 and a net profit of $27,588. Rec. at 137; Defs.' Ex. 12.

7. In 1993, despite a decrease in gross sales to $2,318,670, Tri–Star reported a profit of $223,441. Rec. at 138; Defs.' Ex. 13. Only $277,011 of the sales and $2,227 of the profit were realized in the fourth quarter of 1993, after Plaintiff had been discharged. Rec. at 139; Defs.' Ex. 14.

8. In 1994, Tri–Star reported gross receipts in the amount of $989,960 and a net loss of $78,291. *Id.* at 140; Defs.' Ex. 15.

9. At some point Whitney became convinced that Tri–Star was not a profitable enterprise and decided that Tri–Star would cease operating as a distributor of corrugated packaging products and begin doing business as a freight hauler. Rec. at 141–42, 152. Tri–Star is currently engaged exclusively in the business of hauling freight. *Id.* at 155.

10. Lionel, which continues to operate as a distributor of corrugated products in the southeast, has also taken over some of Tri–Star's accounts in other areas of the country. *Id.* at 143, 170. Plaintiff would not have accepted a position with Lionel in Florida. *Id.* at 143, 196.

*Plaintiff's Employment at Tri–Star*

11. Plaintiff was hired by Tri–Star in 1990 as a salesman. *Id.* at 132. By 1993, Plaintiff was spending four days a week on the road doing outside sales and one day a week at Tri–Star's Lancaster warehouse completing paperwork and other administrative tasks. *Id.* at 48–49.

12. On August 30, 1993, Plaintiff suffered a heart attack in the course of a business meeting, though he did not realize this fact until he entered Lancaster General Hospital the following day. Plaintiff remained in the hospital for a week to ten days. *Id.* at 23–24.

13. Plaintiff returned to work in the last week of September and began working one hour per day. *Id.* at 26.

14. On September 30, 1993, Plaintiff signed and filed an application for unemployment benefits with the Lancaster City Job Center in which he declared under penalty of

---

1. Despite a party's demand for a jury trial, a bench trial may be conducted on the issue of damages after a default judgment has been entered pursuant to Rule 37(b)(2)(C). *See Goldman, Antonetti et al. v. Medfit International, Inc.,* 982 F.2d 686, 692 n. 15 (1st Cir.1993); *Adriana International Corporation v. Thoeren,* 913 F.2d 1406, 1414 (9th Cir.1990); *Benz v. Skiba, Skiba & Glomski,* 164 F.R.D. 115 (D.Me.1995); *Kornes v. Weis, Voisin & Co., Inc.,* 61 F.R.D. 608 (E.D.Pa.1974).

perjury that he had been fired. *Id.* at 46–47; Defs.' Ex. 1.

15. By October 5, 1993, Plaintiff was working up to two or three hours per day for Tri–Star. Rec. at 26.

16. On October 5, 1993, Whitney informed Plaintiff by telephone that his employment at Tri–Star was terminated. *Id.* at 27.

17. Tri–Star hired Plaintiff at a salary of $800 per week. He was given a $50 per week raise in January 1992 and a $150 per week raise in January 1993. Plaintiff also received a $90 per week car allowance and $360 per month for health insurance. Thus, Plaintiff's total compensation package when he was fired was $61,000 per year. *Id.* at 20–21; Pl.'s Ex. 1.

18. Working at Tri–Star caused Plaintiff significant stress in 1993, primarily as a result of constant in-fighting between Whitney and Goldberg. During this time, Plaintiff was smoking heavily and was in a "constant state of anxiety." This stress caused Plaintiff to lose sleep in the months preceding his termination. *Id.* at 82, 91.

19. Plaintiff continued to suffer from a lack of sleep after his termination. *Id.* at 118. Plaintiff spoke with his minister regarding his discharge, but sought no assistance from any psychiatrist, psychologist, cardiologist or other medical professional. *Id.* at 28, 92. The hives that Plaintiff suffered were unrelated to any stress caused by his termination. *Id.* at 88–89.

20. Any anxiety that Plaintiff experienced during this time was also the result of health concerns stemming from his heart attack. *Id.* at 93.

*Plaintiff's Post–Tri–Star Employment History*

21. After being discharged by Tri–Star, Plaintiff contacted ten to fifteen companies in search of employment. Most but not all of these companies were in the packaging industry. Plaintiff also followed up on two to three classified ads. *Id.* at 52–53.

22. Plaintiff sought no retraining or vocational assistance, nor did he register with any employment agency or other placement service. *Id.* at 53–54.

23. In December 1993, Plaintiff was hired by a Minnesota firm called Envirysis to sell recycled packaging products on commission. *Id.* at 34–35. Plaintiff sold products for Envirysis from April 1994 through November 1994 and earned approximately $400 per month. *Id.* at 35, 43.

24. After not being able to secure any other employment, Plaintiff concluded by December 1993 that he would be unable to find a position like the one he held at Tri–Star. *Id.* at 36, 103–104. Feeling that he had "exhausted any opportunities ... to get a job at that time," Plaintiff decided to start his own business, Trinity Packaging ("Trinity"). *Id.* at 36, 56.

25. Although Plaintiff claims that "[i]f a job came along today, [he] would take it," he discontinued searching for employment once he founded Trinity. Rec. at 37, 56, 103–104, 112.

26. Through Trinity, Plaintiff sells packaging products on commission. *Id.* at 37.

27. Plaintiff made no written business plan for Trinity. In addition, Plaintiff testified that he put "zero" capitalization into Trinity, though he later modified this testimony by noting that he withdrew some retirement funds to purchase a phone and fax machine and to add an additional phone line. *Id.* at 59, 102.

28. In 1994, Trinity earned gross income of $4,274 but suffered a net loss of $8,363. *Id.* at 38; Defs.' Ex. 6. These figures include the approximately $2800 that Plaintiff earned from Envirysis. Rec. at 43.

29. In 1995, Trinity earned gross income of $16,926 and made a net profit of $3,879. *Id.* at 38; Defs.' Ex. 7.

30. In 1996, Trinity earned gross income of $18,195 and made a net profit of $8,303. Rec. at 38; Defs.' Ex. 8.

31. Mrs. Clarke owns a business called Seasonal Crafts. Plaintiff assists Mrs. Clarke in this business by cutting wood and by accompanying her to craft shows on weekends. Rec. at 115–16.

32. The amount of time that Plaintiff devotes to his wife's business varies from week to week but averages approximately 25 hours per week. Plaintiff receives no wage for this work. *Id.* at 55, 116.

33. This business became more profitable after Plaintiff was discharged. *Id.* at 55.

*The October 5, 1993 Check* 34. In October 1993, Tri–Star stopped payment on a check in the amount of $3,714.00 issued to Plaintiff for salary and expenses. *Id.* at 39.

35. Neither Whitney nor any other employee at Tri–Star has offered any explanation as to why payment on this check was stopped.

## DISCUSSION

*I. The PHRA Claim Against Tri–Star*

### A. Legal Rules Governing the Damage Award

The PHRA authorizes courts to enjoin a defendant from engaging in discriminatory practices and "order affirmative action which may include, but is not limited to, reinstatement or hiring of employees, granting of back pay, or any other legal or equitable relief as the court deems appropriate." 43 Pa.Cons.Stat.Ann. § 962(c)(3) (Purdon's 1991 & Supp.1997). Back pay is routinely awarded to successful PHRA claimants, *Gallo v. John Powell Chevrolet, Inc.,* 779 F.Supp. 804, 811 & n. 8 (M.D.Pa.1991), includes benefits that would have been received incident to employment, *Kelly v. Matlack,* 903 F.2d 978, 984–85 (3d Cir.1990), and is not reduced either by unemployment benefits collected by the Plaintiff or by taxes that would have been paid on the income. *Taylor v. Central Penn. Drug and Alcohol Services Corp.,* 890 F.Supp. 360, 370–71 (M.D.Pa.1995). In addition, " '[l]egal and equitable relief' includes damages for humiliation and mental anguish," which Plaintiff seeks in this case. *Pennsylvania Human Relations Comm'n v. Zamantakis,* 478 Pa. 454, 387 A.2d 70, 73 (1978), *quoted in Cain v. Hyatt,* 734 F.Supp. 671, 685 (E.D.Pa.1990).[2]

The PHRA also imposes on claimants a duty to mitigate damages. *Lesko v. Clark Publisher Services,* 904 F.Supp. 415, 421 (M.D.Pa.1995). This means that a back pay award is "reduced by any amounts the plaintiff actually earned or could have earned through the exercise of reasonable diligence." *Gallo,* 779 F.Supp. at 813. It is defendant's burden to prove that a plaintiff "did not exercise reasonable diligence in seeking employment substantially equivalent to the position he lost." *Carden v. Westinghouse Electric Corp.,* 850 F.2d 996, 1005 (3d Cir.1988). Generally, an employer meets its burden by demonstrating that (1) substantially equivalent work was available, and (2) the plaintiff did not exercise reasonable diligence to obtain the employment. *Booker v. Taylor Milk Co., Inc.,* 64 F.3d 860, 864 (3d Cir.1995). In this case, however, we have found that after seeking employment for the three months following his termination, Plaintiff abandoned his job search in favor of forming his own business. Our Court of Appeals has specifically held that establishing one's own business can satisfy the duty to mitigate if the effort constitutes a reasonable alternative to finding other comparable employment. *Carden,* 850 F.2d at 1005; *Taylor,* 890 F.Supp. at 372. The "threshold question" is whether the choice to enter into one's own business was "a reasonable method of mitigating damages." *Carden,* 850 F.2d at 1005. The burden of proving that it is not rests with the defendant. *Id.*[3]

### B. Damages Awarded in this Case

We note at the outset that we found neither Plaintiff nor Ms. Whitney to be a very

**2.** Plaintiff waived his punitive damages claim at the outset of the April 21 hearing.

**3.** Given our disposition of the mitigation of damages issue, it is not necessary to address Tri–Star's claim that Plaintiff would no longer have been employed after May 31, 1994. We note in passing, however, that it is well-settled that if a plaintiff would have lost his job for permissible reasons sometime after his discharge, back pay is limited accordingly. *Taylor,* 890 F.Supp. at 371 ("Back pay terminates as of the date when the plaintiff's former job would have been eliminated due to other factors."); *Bhaya v. Westinghouse Electric Corp.,* 709 F.Supp. 600, 605 (E.D.Pa. 1989), *aff'd* 922 F.2d 184 (3d Cir.1990); *Helbling v. Unclaimed Salvage & Freight Co., Inc.,* 489 F.Supp. 956, 963 (E.D.Pa.1980).

credible witness at the April 21 hearing, though it is Plaintiff's credibility that is particularly relevant to the decision we announce today. With respect to Plaintiff, we base this finding on (1) the fact that he applied for unemployment benefits prior to being terminated by Tri–Star and indicated on this application that he had already been fired, (2) inconsistencies between his deposition testimony and his testimony at the hearing, and (3) inconsistent testimony at the hearing regarding the hives he experienced after his discharge. *See* Rec. at 29, 48, 64, 88, 90–91; Defs.' Ex. 1. That said, we begin our analysis.

■ First, we find no credible evidence that Plaintiff's discharge caused him more than minimal emotional distress. Indeed, Plaintiff spoke far more convincingly of the mental anguish caused by his final year of employment at Tri–Star. *See* Rec. at 82, 91. We therefore award Plaintiff the nominal sum of $1 for any emotional distress caused by his discharge and limit the bulk of his award under Count I of the Second Amended Complaint to back pay. At the time of his discharge, Plaintiff earned $1,000 per week in salary plus $360 per month for health insurance and $90 per week in car allowance. Plaintiff's award should not include the car allowance because he no longer used his car for business-related purposes after his discharge. The question is whether and to what extent the rest of Plaintiff's back pay award is limited by his failure to mitigate damages.

■ Tri-Star argues first that Plaintiff's efforts to secure employment in the three months immediately following his discharge were not reasonably diligent. Tri-Star has failed, however, to present any evidence of substantially equivalent employment available during this time, thus it has failed to satisfy its burden in this regard. *See, e.g., Booker,* 64 F.3d at 864 (upholding finding that plaintiff failed to mitigate damages where record included exhibit containing "numerous postings" for substantially equivalent positions). Plaintiff is therefore at least entitled to recover back pay for the period up until he abandoned his search in December 1993.

Tri–Star next argues that Plaintiff failed to exercise reasonable diligence by abandoning his job search in December 1993 in favor of forming his own business. Tri–Star emphasizes that Plaintiff abandoned his job search after just three months, had no written business plan for Trinity and invested no capital in the business. Tri–Star also contends that Trinity "has not been profitable." Defs.' Prop. Findings of Fact, ¶ 4. Plaintiff responds that "[g]iven his extensive knowledge and experience in this specialized industry, [he] reasonably believed that the establishment of his own business would be a viable alternative to continuing his theretofore fruitless efforts in seeking outside employment." Pl.'s Prop. Findings of Fact, ¶ 13. We therefore should not penalize this "laudable effort" which suffered a net loss in the first year but has since realized modest profits. *See Taylor,* 890 F.Supp. at 373.

After carefully weighing the evidence in the record before us, we conclude that it was not a reasonable method of mitigating damages for Plaintiff to abandon his job search in favor of forming Trinity Packaging in December 1993. First, it is the firm impression of this Court that Plaintiff had given up all hope of finding a job equivalent to the position he held at Tri–Star as of December 1993. Despite Plaintiff's claim that he did not discontinue his search at this time and that "[i]f a job came along today, [he] would take it," he testified clearly that he felt that he had "exhausted any opportunities" after a mere two months of looking and that his time would be better spent building his own business. Rec. at 37, 56, 103–104, 112.

While such a decision can no doubt be a reasonable method of mitigating damages, as the Third Circuit clearly held in *Carden,* we find Plaintiff's particular efforts in this case to have been insufficient. *See generally Hansard v. Pepsi–Cola Metropolitan Bottling Co.,* 865 F.2d 1461, 1468 (5th Cir.1989). In so doing, we give strong weight to Plaintiff's statement that he invested "zero" start-up capital in the business. Rec. at 59. Indeed, Plaintiff admitted that failing to capitalize a new business venture "can be" a "formula for failure" but claimed that he "had the guts to do it." Rec. at 59–60.

Moreover, even crediting as true Plaintiff's later testimony regarding the use of retirement funds to purchase telephone equipment, this minimal capitalization distinguishes Trinity from the "laudable effort" of the plaintiff in *Taylor*. In *Taylor*, the plaintiff made two ultimately unsuccessful efforts to open a gift shop, investing start-up capital borrowed from relatives on the first occasion and borrowed from her son on the second. 890 F.Supp. at 367; *see also Smith v. Great American Restaurants, Inc.*, 969 F.2d 430, 434 (7th Cir.1992) (holding that plaintiff fulfilled duty to mitigate where, following termination, she leased a small restaurant facility and started a restaurant using her savings and a gift from her son). While Plaintiff did testify that he attempted to secure loans for start-up capital, we do not credit this testimony in the absence of any documentary support.[4]

■ We therefore conclude that Plaintiff's decision to discontinue his job search efforts in favor of starting a business founded on "guts" rather than capital was not a reasonable method of mitigating damages under the circumstances. Plaintiff testified that he embarked on this course of conduct in December 1993 after he returned from Minnesota. Because we lack more precise information as to when Plaintiff made this decision and the burden is on Tri–Star to prove the extent to which a back pay award is reduced, we will award back pay through the entire month of December 1993.

*II. The WPCL Claim Against Tri–Star and Whitney*

■ Under the WPCL, Plaintiff may recover unpaid wages, interest, attorney's fees and, if no good faith dispute of the claim is asserted by the defendant, liquidated damages in an amount equal to twenty-five percent of the total wages due. 43 Pa.Cons.Stat. Ann. § 260.1 *et seq.* (Purdon's 1992). All allegations against Defendants Tri–Star and Whitney having been deemed admitted,

Plaintiff is entitled to recover the $3714 in unpaid wages, interest on these wages, reasonable attorney's fees, and liquidated damages in the amount of $928.50.

**CONCLUSIONS OF LAW**

1. Subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1332.

2. All well-pleaded allegations of the Second Amended Complaint are deemed admitted pursuant to a default judgment entered against Defendants Whitney and Tri–Star under Rule 37(b)(2)(C) of the Federal Rules of Civil Procedure.

3. Back pay and damages for emotional distress are available under the PHRA.

4. For the minimal emotional distress Plaintiff suffered as a result of his discharge, we award $1.

5. Plaintiff is entitled to recover back pay for the period during which he fulfilled his duty to mitigate damages.

6. Defendant Tri–Star did not present any evidence of substantially equivalent employment available to Plaintiff in October, November or December of 1993.

7. Plaintiff did not exercise reasonable diligence in abandoning his job search in December 1993 to start his own business.

8. Plaintiff is therefore entitled to back pay for the period beginning October 5, 1993, and ending December 31, 1993.

10. When Plaintiff was terminated on October 5, 1993, he earned $1,000 per week in salary, $90 per week car allowance, and $360 per month for health insurance.

11. Plaintiff is not entitled to recover the weekly car allowance because he no longer used his car for business-related purposes after his discharge.

12. Plaintiff's total back pay award for this period is therefore $13,000 in salary and

---

4. Further, we find it difficult to believe that Plaintiff devoted any more than part-time hours to Trinity in 1994, when the business reported a total of $4,274 in gross income, $2,800 of which came from Envirysis, a job which Plaintiff obtained in 1993 before he decided to form Trinity.

*See Hansard*, 865 F.2d at 1468 (holding that plaintiff's part-time flea market enterprise did not satisfy duty to mitigate). On the other hand, Plaintiff clearly appears to have devoted substantial time to the effort in subsequent years.

$1,080 in health care benefits, or a total of $14,080.

13. Plaintiff is entitled to pre-judgment interest on the back pay award. Such interest should be calculated at the applicable statutory rates for overpayments set forth in 26 U.S.C. § 6621, paid from the respective dates that the lost wages accrued, and compounded quarterly. *See Kraemer v. Franklin and Marshall College,* 941 F.Supp. 479, 487 (E.D.Pa.1996).

14. Plaintiff may recover reasonable attorney's fees.

15. Under the WPCL, Plaintiff may recover unpaid wages, interest, attorney's fees and, if no good faith dispute of the claim is asserted by the defendant, liquidated damages in an amount equal to twenty-five percent of the total wages due.

16. Plaintiff is entitled to recover $3,714 in unpaid wages, interest on this amount to be calculated at the applicable statutory rates for overpayments set forth in 26 U.S.C. § 6621 and compounded quarterly, reasonable attorney's fees, and liquidated damages in the amount of $928.50.

An appropriate Order follows.

## ORDER

AND NOW, this 22nd day of August, 1997, default judgment having been entered pursuant to Rule 37(b)(2)(C) of the Federal Rules of Civil Procedure on both counts of the Second Amended Complaint against Defendants Jani B. Whitney and Tri–Star Packaging, Inc., and upon consideration of the witnesses and exhibits presented by the parties at the April 21, 1997, damages hearing in this matter and the proposed findings of fact and conclusions of law submitted by the parties thereafter, it is hereby ORDERED in accordance with the attached Memorandum as follows:

(1) Pursuant to the default judgment entered on Count I of the Second Amended Complaint against Defendant Tri–Star Packaging, Inc., Plaintiff is AWARDED $1 in damages for emotional distress, $14,080 in back pay, interest on the back pay award to be computed in accordance with the attached Memorandum, and reasonable attorney's fees;

(2) Pursuant to the default judgment entered on Count II of the Second Amended Complaint against Defendants Jani B. Whitney and Tri–Star Packaging, Inc., Plaintiff is AWARDED $3,714 in unpaid wages, interest on this amount to be calculated in accordance with the attached Memorandum, reasonable attorney's fees, and liquidated damages in the amount of $928.50;

(3) Plaintiff and Defendant Tri–Star shall jointly submit a schedule calculating pre-judgment interest on both the back pay and unpaid wages awards in accordance with the attached Memorandum within fourteen (14) days of the date of entry of this Order;

(4) Plaintiff is granted leave to file a petition for attorney's fees within twenty-one (21) days of the date of entry of this Order.