Edward MACK

v.

**CIVIL SERVICE COMMISSION**
**(City of Philadelphia).**

**Appeal of City of Philadelphia.**

Commonwealth Court of Pennsylvania.

Argued Nov. 5, 2002.

Decided Feb. 24, 2003.

As Amended Feb. 25, 2003.

Leah Cilo, Philadelphia, for appellant.

Michael I. McDermott, Philadelphia, for appellee.

Before FRIEDMAN, J., LEADBETTER, J., and KELLEY, Senior Judge.

OPINION BY Judge LEADBETTER.

This case raises the question of whether the Philadelphia Civil Service Commission (Commission) has jurisdiction to enforce agreements made by parties to settle prior actions before the Commission. In this case, the Commission held that it had no such authority. On appeal, common pleas

ordered the settlement enforced and ordered the payment of money taken in breach of the agreement. This is an appeal by the City of Philadelphia (City) from that order.

Unfortunately, neither the Commission nor common pleas took any testimony, so our understanding of the factual background of this matter—garnered from arguments of counsel and documents which were placed into the record—is, to say the least, uncertain and incomplete. However, it appears that Mack worked for the Streets Department of the City of Philadelphia (Department) as a Street Repair Crew Chief II and claimed that he suffered a work-related injury in April of 1996. He applied for Injured on Duty (I.O.D.) benefits, which he began receiving, and also applied for workers' compensation benefits. However, on July 5, 1996, the Streets Department determined that Mack was not injured on duty and therefore denied I.O.D. benefits. On July 15, 1996, Mack filed an appeal with the Civil Service Commission, challenging the Department's determination that his disability from April 1996 to July 1996 was not service-connected.

Evidently, by February of 1997 the only remedy sought by Mack in the Civil Service appeal was whether the City could recoup the I.O.D. benefits paid to him in 1996. On February 4, 1997, Ronald Bartash, representing the City, wrote Mack's attorney, Michael McDermott, stating, *inter alia,* "that the mistakenly paid Injured On Duty benefits from 1996 cannot be recouped and, therefore, it appears that

Mr. Mack's Civil Service Appeal is moot." Bartash asked McDermott to advise the Commission that a personal appearance before it would be unnecessary.

On February 6, 1997, Bartash again wrote to McDermott, this time reiterating that the City would not be able to recoup the erroneously paid I.O.D. benefits; that the City would not seek to convert Mack's I.O.D. benefits to sick or vacation time; and that, because Mack's appeal was moot, he trusted that McDermott would withdraw Mack's civil service appeal. On February 11, 1997, Bartash wrote to the Civil Service Commission, stating, *inter alia,* that, since Mack had filed his appeal to prevent the conversion of his I.O.D. benefits, and since the City "at this time, would be unable to convert the Injured on Duty benefits it paid to Mr. Mack from April 8, 1996 through and including June 13, 1996," Mack's appeal was moot. Bartash requested that the matter be withdrawn.[1]

On February 25, 1997, Mack withdrew his appeal to the Civil Service Commission. In addition, in the workers' compensation case, the parties entered into a stipulation on March 27, 1997, that Mack's April 1996 right ankle injury was not related to an earlier work accident of September 13, 1990 or any other work-related incident.[2] In spite of Bartash's prior representations, on June 16, 1997, Anthony DiMeo, of the Department's Personnel Office, wrote Mack explaining that Charmayne Purnell, Occupational Safety Administrator, had instructed his office to recoup Mack's I.O.D. benefits. On September 17, 1997, Mack's attorney, McDermott, wrote DiMeo, en-

---

**1.** The Statements of the Case in both parties' briefs set forth that Mack's disability lasted from April 10, 1996 through July 5, 1996, but the City sought to recoup benefits paid to Mack from April 8, 1996 through June 13, 1996.

**2.** The parties also agreed that the City would remain responsible for all reasonable and necessary medical expenses related to the September 13, 1990, work injury as well as any disability which might arise from that work injury. This stipulation was adopted by an order of the WCJ dated April 18, 1997.

closing a copy of Bartash's February 11, 1997, letter to the Civil Service Commission and asking DiMeo not to take further action regarding Mack's benefits. On November 7, 1997, DiMeo again wrote Mack, stating that, according to the payroll registers, Mack was paid $4,225.00 during the period of April 8, 1996 to June 13, 1996 and that the Personnel Office had been directed to proceed with the recovery of these monies. On January 18, 1998, the Department started deducting $50.00 per pay period from Mack's check as repayment for the I.O.D. benefits he had erroneously received. On April 24, 2000, McDermott wrote to Purnell, demanding that the City stop withdrawing money from Mack's paycheck and that it reimburse Mack the money that it had already recouped, with interest. McDermott indicated that, if he did not hear from Purnell within fourteen days, he would file suit.

In August 2000, Mack filed suit against the City in the Philadelphia Municipal Court. The municipal court judge opined that the Civil Service Commission had jurisdiction of the issue, wrote the Commission asking it to relist and expedite the matter, and then dismissed the case on November 6, 2000.[3] Apparently, Mack did not appeal from the dismissal. On November 28, 2000, the Commission heard argument from the attorneys; although no witnesses were presented, the parties' workers' compensation stipulation was entered as an exhibit. On December 18, 2000, the Commission determined that it could not compel/enforce a settlement agreement and that such authority lay only with the courts.

On January 16, 2001, Mack filed an appeal with the Court of Common Pleas of Philadelphia County. After oral argument and consideration of the February 1997 letters of counsel, common pleas reversed the Commission's decision not to enforce the agreement, specifically stating: "The underlying agreement memorialized by correspondence dated February 4, 1997, from Ronald P. Bartash, Esq. to Michael McDermott, Esq. is controlling. Appellant shall be reimbursed $4225.00 in improperly withheld benefits." Common pleas determined that the Department could not be permitted to benefit from its breach of the parties' settlement entered into in 1997. Common pleas op. dated March 5, 2002 at 6. This appeal by the City followed.

On appeal, the City claims that the Commission lacked jurisdiction over the proceedings in 2000 because: (1) any appeal to the Commission in 2000 was untimely, (2) Mack was not, as common pleas held, entitled to a civil service appeal nunc pro tunc and (3) the Commission has no authority to enforce settlement agreements. We find the last issue dispositive and so will not address the timeliness questions.

■ It first should be noted that the only remedy sought before the Commission in 2000 was enforcement of the alleged settlement agreement, not reinstatement of the original appeal. *Compare Sofronski v. Civil Serv. Comm'n, City of Philadelphia*, 695 A.2d 921 (Pa.Cmwlth. 1997); *see also Morningstar v. Dep't of Transp.*, 166 Pa.Cmwlth. 342, 646 A.2d 666 (1994), involving the State Civil Service Commission. At the November 2000 "hearing" before the Commission, McDermott stated that "this isn't a case about an injury" but, rather, it is "about an agreement and reliance on that agreement to your detriment." Hearing of No-

---

3. Apparently, Stephen Atkins, Chief Deputy City Solicitor, had informed the municipal court judge that Mack had not exhausted his administrative remedies and that he should either go back to the Civil Service Commission or file a grievance with his union. *See* Hearing of November 28, 2000 at 46–48.

vember 28, 2000 at 51. Moreover, by this time, the City had already recouped the erroneously paid benefits, so Mack sought compensation for the City's breach of its purported contract. Thus, the issue before the Commission was not whether it could reopen a case which was withdrawn based upon misrepresentations of opposing counsel. Rather, the question was whether it had the authority to decide if the prior disposition of Mack's civil service appeal had created a binding contract and, if so, order the City to repay the money it had recouped in disregard of its agreement—in other words, whether it could find a breach of contract and award appropriate damages.

■ Curiously, neither of the parties has directly addressed the central jurisdictional issue upon which the Commission based its dismissal. Moreover, our research has not uncovered any law specifically speaking to the Commission's authority to enforce settlement agreements.[4] Nonetheless, while courts have certain inherent powers, the same is not true of administrative agencies, whose authority is limited to the powers granted by legislative enactment. *City of Pittsburgh Comm'n on Human Relations v. MacBeth,* 37 Pa.Cmwlth. 636, 391 A.2d 1109, 1111–12 (1978), citing *Pennsylvania Human Relations Comm'n v. Zamantakis,* 478 Pa. 454, 387 A.2d 70 (1978).

Here, the Commission was established by the Philadelphia Home Rule Charter, which sets forth that city's civil service regulations. Section 7–201 of the Charter contains the Commission's express grant of appellate authority and does not in any way touch upon the enforcement of settlement agreements. It states in pertinent part:

> The Civil Service Commission shall hear and dispose of appeals as provided in this section. Any employee who is dismissed or demoted after completing his probationary period of service, or who is suspended for more than ten days in any one year, may, within thirty days after such dismissal, demotion or suspension, appeal to the Commission for review thereof. Every appeal shall be heard promptly. Upon such review, both the appealing employee and the appointing authority involved shall have the right to be heard publicly and to present evidence; but technical rules of evidence shall not apply. The findings and decisions of the Commission shall be in writing and shall be certified to the Personnel Director.

> If the Commission sustains the appeal on the ground that the action complained of was taken by the appointing authority for any political, religious or racial reason, or labor union activity lawful for municipal employees, it shall order the employee to be reinstated to his former position without loss of pay for the period of his suspension. In all other cases where the Commission sustains the appeal of the employee it shall order the reinstatement of the employee in his former position with or without loss of pay for the period of his suspension or direct that he be appointed to a position of equal status in the same office, department, board or commission with or without loss of pay for the period of his suspension. If the Commission overrules the appeal of the employee, it shall confirm the action of the appoint-

---

4. However, 4 Pa.Code § 105.14c(b) relating to the *State* Civil Service Commission provides that: "Unless the Commission is requested to review and approve the settlement, the Commission *will not be responsible* for the enforcement of a settlement agreement." (Emphasis added.)

ing authority which shall be final as of the date it was taken.

351 Pa.Code § 7.7–201.

Indeed, the overall Charter provisions relating to the Commission focus more on the Commission's administrative function than its adjudicatory role. The stated purpose of the Philadelphia Civil Service Regulations is to implement the Philadelphia Home Rule Charter provisions regarding "the establishment and administration of a merit system" by supplementation of the Charter's generally broad provisions "with specific detail as contained in policies and procedures covering the many and various phases of *personnel administration.*" Philadelphia Civil Service Regulation 1.01. (Emphasis added.)[5] According to Section 7–200 of the Home Rule Charter, 351 Pa. Code § 7.7–200, the Commission's advisory and supervisory functions are to "advise the Mayor and the Personnel Director on problems concerning *personnel administration* in the City service"; "make any investigation which it considers desirable and submit recommendations to the Mayor and Personnel Director"; "approve, modify or disapprove proposed civil service regulations and amendments thereto"; and "promote the improvement of City *personnel administration* and foster the interest of institutions of learning and of civic, professional and employee organizations in the improvement of personnel standards." (Emphasis added.) Section 7–300 of the Charter, 351 Pa.Code § 7.7–300, further provides: "The purpose of the civil service provisions of this charter is to establish for the City a system of *personnel administration* based on merit principles and scientific methods governing the appointment, promotion, demotion, transfer, lay-

off, removal and discipline of its employees, and other incidents of City employment." (Emphasis added.) In this vein, appeals under Philadelphia Civil Service Regulation 32.12, which is how Mack's appeal before the Commission was officially classified, relate merely to matters of personnel administration (*e.g.,* existence, nature or service-connectedness of disability), not to enforcement of contracts.

■ Moreover, even when particular administrative agencies have been found authorized to enforce settlements entered in cases before them, that power has not included the authority to award compensatory damages for breach of the settlement agreement. *See, e.g., Mechensky v. Pennsylvania Human Relations Comm'n,* 134 Pa.Cmwlth. 192, 578 A.2d 589, 595 (1990). Finally, it is not without significance that the Commission itself believed that enforcement of settlement agreements was outside its jurisdiction. When an agency's interpretation of its own regulations is logical and not clearly erroneous, courts must give great deference to that interpretation. *Pennsylvania State Police, Bureau of Liquor Control Enforcement v. American Serbian Club,* 750 A.2d 405, 408 (Pa. Cmwlth.2000).

For all of these reasons, we hold that enforcement of a settlement agreement— at least to the extent the claim is for money damages for breach of the agreement—is outside the scope of the authority granted to the Commission. Because the Commission had no subject matter jurisdiction, common pleas likewise had no such jurisdiction.

---

5. The City's powers of home rule were originally derived from Section 1 of Article XV of the Pennsylvania Constitution and the First Class City Home Rule Act, Act of April 21, 1949, P.L. 665, *as amended,* 53 P.S. §§ 13101–13157. Section 1 of Article XV of the Pennsylvania Constitution has since been repealed; *see now* Article IX, § 2 of the Pennsylvania Constitution, relating to home rule.

We sympathize with common pleas' frustration in this matter. The facts proffered suggest that the City acted in flagrant disregard of the word given by its counsel, and was richly deserving of being held to its commitment, if not subjected to additional sanctions. Moreover, the harm was compounded when a proper forum to address this issue, the municipal court, derailed Mack's contract action in favor of further proceedings by the Commission.[6] Nonetheless, common pleas did not have the contract action before it, but only an appeal from an order of the Commission. Since the Commission properly ruled that it lacked jurisdiction, common pleas had no alternative but to affirm.[7]

### ORDER

AND NOW, this 24th day of February, 2003, the order of the Court of Common Pleas of Philadelphia County, First Judicial District of Pennsylvania, in the above-captioned matter is hereby REVERSED.

---

**6.** The propriety of dismissal of the Municipal Court action is not before us. Therefore, we have not been called upon to address whether, based upon a breakdown of the judicial process, Mack could have obtained an appeal nunc pro tunc from that order, or could appropriately have sought transfer back to that court.

**7.** *See also Elko v. Civil Serv. Comm'n,* 16 Pa.Cmwlth. 102, 329 A.2d 320 (1974) (decided under Section 8 of the former Local Agency Law, Act of December 2, 1968, P.L. 1133, *as amended,* 53 P.S. § 11308, which has since been repealed). We further note that, since the existence of an agreement was disputed, even if common pleas had jurisdiction, it could not properly have entered an order of enforcement without an evidentiary record.