# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Jacob Daniel Kanofsky and | : | |
| Alvin S. Kanofsky, | : | |
| Appellants | : | |
| | : | |
| v. | : | No. 2740 C.D. 2015 |
| | : | No. 2759 C.D. 2015 |
| Tax Review Board | : | Submitted: September 9, 2016 |

BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
                    HONORABLE JULIA K. HEARTHWAY, Judge
                    HONORABLE DAN PELLEGRINI, Senior Judge

*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**                    **FILED:  January 5, 2017**

In these consolidated cross-appeals, Appellants Alvin Sheldon Kanofsky and Jacob Daniel Kanofsky (the Kanofskys) and the City of Philadelphia (the City) appeal from an order of the Court of Common Pleas of Philadelphia County (trial court), granting in part and denying in part the Kanofskys' appeal from an order of the Philadelphia Tax Review Board (Board).  For the reasons that follow, we affirm in part, vacate in part, and remand the matter to the trial court for further proceedings.

The Kanofskys inherited a residential property from their father, located at 1904 Conlyn Street, Philadelphia, Pennsylvania 19141 (the Property).  On December 31, 2009, the City of Philadelphia, Department of Licenses and Inspections (L&I), sent a violation notice declaring the Property to be a fire hazard and in violation of the Philadelphia Property Maintenance Code (Property Code).

L&I addressed the notice to "Philip Kanofsky and Mollie" at 325 Shawmont Avenue-Apt. F, Philadelphia, PA 19128-4248.

Between January 11 and 13, 2010, L&I employees entered the Property to clean and abate potential fire hazards. L&I sent a bill addressed to "Philip Kanofsky and Mollie" at Jacob Kanofsky's address, dated February 2, 2010, which indicated that the cost of the work performed on the Property totaled $25,268.42. The Kanofskys appealed the bill to the Board.

After conducting a hearing, the Board issued an opinion, dated October 27, 2011, in which it upheld the imposition of charges but reduced the principal amount of the charges by 50 percent and eliminated an administrative charge, interest, and lien charges.

The Kanofskys appealed to the trial court, arguing several issues relating to: (1) absence of notice; (2) excessiveness of the bill; (3) entitlement to reimbursement for loss of valuables; (4) inconsistent statements by the Kanofskys' initial counsel; (5) failure of the notice to satisfy due process; and (6) unjust enrichment/seizure without due process. In oral argument before the trial court, the Kanofskys argued that they never received the notice and that it was unlikely that L&I could have inspected the Property and mailed the notice on the same day, December 31, 2009, which was New Year's Eve. In addition to questioning whether L&I ever sent the notice, the Kanofskys also contended that the notice did not provide sufficient time to respond, because it provided only five days within which to file an appeal of the violation notice.

By opinion and order dated September 11, 2012, the trial court concluded that the Board did not err in determining that L&I sent the notice to the Kanofskys and that the notice was sufficient. The trial court rejected the

Kanofskys' argument that the bill still was excessive after the Board reduced the amount. With regard to the Kanofskys' claims that the City owed money to them as reimbursement for the removal of allegedly valuable items in the house, the trial court concluded that such claims were beyond the Board's adjudicatory authority and beyond the scope of the appeal to the trial court.

The Kanofskys then appealed the matter to this Court, raising the following issues: (1) whether L&I notified the Kanofskys of the violations, (2) whether substantial evidence supports the Board's finding regarding the amount of the bill, and (3) whether the Kanofskys are entitled to be reimbursed for the value of some of the items removed from the premises. The Kanofskys essentially argued that the record did not support the Board's factual determinations regarding the notice and the cost of the clean-up.

By opinion and order filed May 23, 2013, we held that the Board did not err in concluding that the notice was sufficient and that the trial court correctly concluded that the Kanofskys' claims that they were entitled to be reimbursed for the value of property removed from the premises arose under the common law and were not within the jurisdiction of the Board. We also held, however, that the trial court erred in determining that the Board made certain factual findings based upon substantial evidence in the record. Specifically, we held that the Board's 50 percent reduction in charges appeared to be an arbitrary amount and was not supported by any evidence of record. Accordingly, we vacated the trial court's order as to the amount of the bill and remanded the matter to the trial court with instruction that the matter be remanded to the Board to review the record it created and to render factual findings that are supported by substantial evidence of

3

record.  *See Kanofsky v. City of Philadelphia, Tax Review Bd.*, (Pa. Cmwlth., No. 1398 C.D. 2013, filed May 23, 2013) (*Kanofsky I*).[1]

On remand, the Board determined that the principal amount due for the work was $6,970.30.  In its opinion and order dated May 7, 2015, the Board considered documentation of the cost for the laborers, truck usage, truck drivers, and supplies, and it concluded that the City assigned and billed for eight laborers and two truck drivers, two trucks, and certain materials over a three-day period. The Board further found that the Kanofskys, in appealing the Board's original order, had acted in good faith, without negligence or intent to defraud, and, thus, it ordered that the City shall abate half of the cost of the interest charges and half of the cost of the lien charges accrued on the calculated amount.  The Board further ordered that the City shall recalculate the total amount due including interest and lien charges, based on the new principal amount of $6,970.30.  The Kanofskys appealed the Board's order to the trial court.

On November 16, 2015, the trial court issued an opinion and order, affirming in part and reversing in part the Board's order.  The trial court decreased the total principal amount of the charges to $4,725.30, reasoning that the Board had insufficient evidence to support its findings of fact numbered 8(c) and 8(e). Specifically, the trial court held that there was no substantial evidence in the record to support the Boards findings that:  (1) "[t]wo trucks were utilized over the 3-day work period at a cost of $40 per hour for 3 days or 24 hours each at a cost

---

[1] The Kanofskys appealed the decision of this Court by petitioning the United States Supreme Court for a writ of certiorari.  The United States Supreme Court denied their petition on November 10, 2014.

4

of $1,920"; and (2) "[t]he workers collected and disposed of 670 bags of trash for a cost of $325." (Supplemental Reproduced Record (S.R.R.) at 22.)

The City and the Kanofskys filed cross appeals to this Court. On appeal,[2] the Kanofskys argue that the trial court erred in determining that the Board's decision was based on substantial evidence with respect to the remaining $4,725.30 portion of the charge, relating to the cost of workers and materials, that the trial court upheld. Conversely, the City argues that the trial court erred in holding that the Board's decision was not based on substantial evidence with respect to the $2,245.00 portion of the charges, relating to the trucks, truck drivers, and cost of waste disposal, that the trial court vacated. Further, the Kanofskys seek litigation expenses, judicial oversight of the City's process of collecting cost incurred for abating hazards, and punitive damages for the City's allegedly malicious conduct.[3]

Courts have defined substantial evidence as "relevant evidence upon which a reasonable mind could base a conclusion." *Rohde v. Unemployment Comp. Bd. of Review*, 28 A.3d 237, 242 (Pa. Cmwlth. 2011). In evaluating the record to determine whether there is substantial evidence to support the

---

[2] When a trial court takes no additional evidence in an appeal from a local agency's adjudication, this Court's review is limited to considering whether the local agency violated any constitutional rights or erred as a matter of law, and whether all necessary findings of fact are supported by substantial evidence. 2 Pa. C.S. § 754.

[3] Additionally, the Kanofskys argue that the City did not give proper notice of the violations and that they are entitled to be reimbursed for the value of items removed from the Property by the City. As discussed above, we previously held that the Board did not err in concluding that the Kanofskys received proper notice of the violations and that the Board did not have authority to award compensation for the alleged taking of the Kanofskys' property. *See Kanofsky I*, slip op. at 7, 11. Accordingly, the Kanofskys may not relitigate these issues on appeal.

adjudicatory findings, this Court examines the testimony in the light most favorable to the prevailing party, giving that party the benefit of any inferences that can logically and reasonably be drawn from the evidence. *Id.* Courts engage in a substantial evidence analysis through examination of the record as a whole, *Taylor v. Unemployment Compensation Board of Review*, 378 A.2d 829, 831 (Pa. 1977), and may conclude that factual findings are binding in reviewing an appeal only when the record taken as a whole contains substantial evidence to support them, *Penflex, Inc. v. Bryson*, 485 A.2d 359, 365 (Pa. 1984).

The Kanofskys argue that the trial court erred in concluding that substantial evidence exists to support the Board's findings regarding the $4,725.30 charge for workers and materials, because the only evidence presented to support the amount of the bill was "confusing, unintelligible and contradictory." (Kanofskys' Br. at 8.) The City argues that the trial court erred in concluding that substantial evidence does not exist to support the Board's finding regarding the $2,245.00 charge for the two trucks, drivers, and the cost of waste disposal, because the worksheet and the testimony of two witnesses constitutes substantial evidence supporting the Board's finding regarding that charge.

The only documentary evidence of the cost of the abatement was a "worksheet," which recorded the hours worked by the City's abatement workers. The worksheet itself is simplistic and contains little information. It appears to provide that the City used 20 laborers, nine trucks, and nine truck drivers to clean the Property. The worksheet, however, only lists the names of eight workers and does not indicate whether any of those workers are truck drivers rather than abatement workers. Additionally, the worksheet lists charges totaling $316.54 for the cost of materials, such as trash bags and lumber, used in the abatement and

6

charges in the amount of $325.00 for "tons," which the City alleges is the cost of disposing of the waste material removed from the Property. The City also provided several photographs of the site taken during the abatement.

The City also presented two witnesses who participated in the abatement. An unnamed abatement worker testified that he was on the Property to perform the abatement, but that he was not able to testify how many workers were on the Property on any of the three days. He did testify that, from his experience, the City typically employed four abatement workers for every truck used to remove the trash. Additionally, an abatement supervisor testified in an attempt to clarify the language of the worksheet. The Board, however, went off the record before the supervisor's testimony was complete, and the Board rendered its October 27, 2011 opinion without clarifying the abatement supervisor's testimony regarding the worksheet.

In its May 7, 2015 opinion, the Board based its calculation on the names of abatement workers listed on the worksheet rather than the number (20) entered in the column next to the term "abatement workers," determining that the worksheet supported a conclusion that only the eight named workers actually participated in the abatement. Accordingly, the Board presumed that each worker worked for eight hours per day for three days at the rate listed on the worksheet, $17.99 per hour, for a total cost of $3,454.08. The Board next found that the City used two trucks for eight hours per day for three days at a cost of $40 per hour, for a total cost of $1,920.00. In addition to the cost of the trucks, the Board found that the City employed two truck drivers at a rate of $19.98 per hour for eight hours a day for three days, totaling $959.04. The Board based this finding on the testimony of the unnamed worker that the City typically employed

7

one driver and one truck per four workers, and, thus, the eight named workers would require two drivers and two trucks. The Board further concluded that the cost of the materials included $247.90 for trash bags and $64.28 for lumber, reasoning that photographs of the site demonstrated that those materials were used during the cleanup. Finally, the Board found that the City had incurred a cost of $325.00 in disposing of the trash collected from the Property.

A reasonable person, presented with the evidence above, could logically and reasonably conclude that eight workers participated in the cleanup at the hourly rate listed on the worksheet, that the City used two trucks and two truck drivers at the rate listed on the worksheet, and that the City incurred costs for waste disposal and materials shown in the photographs of the cleanup site. Thus, the Board's conclusion with respect to the entire amount of $6,970.30 was supported by substantial evidence. The Board determined that the eight names listed on the worksheet indicated that eight workers participated in the abatement. Based on the testimony of the unnamed worker, the Board inferred that, if the City typically employed one truck and driver for every four abatement workers, in this case, the City would have needed to employ two trucks and two truck drivers for an abatement job that required eight workers. The City, as the prevailing party before the Board, is entitled to reasonable inferences drawn from the evidence presented at the hearing. *Curran v. Unemployment Comp. Bd. of Review*, 752 A.2d 938, 941 (Pa. Cmwlth. 2000). Thus, the Board reasonably inferred that the City incurred the cost of two trucks and two truck drivers at a total cost of $2,245.00. With regard to the cost for materials, the Board based its determination on the prices listed on the worksheet for materials identifiable in the photographs submitted as evidence. Additionally, with regard to the $325.00 charge for disposing of the waste, the

8

Board simply found the amount listed on the worksheet regarding the cost of disposing of the waste material, listed as "tons," to be accurate and credible. In total, the Board concluded that the cost for the abatement was $6,970.30. Accordingly, we conclude that the trial court erred in holding that the $2,245.00 portion of the charge was not based on substantial evidence.[4]

Additionally, the Kanofskys appear to be requesting punitive damages, attorney's fees, and continuous judicial oversight of the City's efforts to collect costs incurred in abating hazards. With respect to the Kanofskys' request for attorney's fees, it is well-settled that a *pro se* litigant cannot recover attorney's fees for the work expended in litigating his or her own case. *See Westmoreland Cnty. v. Allegheny Cnty.*, 723 A.2d 1084, 1086-87 (Pa. Cmwlth. 1999). With respect to the Kanofskys' request for punitive damages and judicial oversight, it is clear that the Board does not have the authority to award punitive damages against the City, nor does it have the authority to order a court to monitor the City's billing and collection efforts. *See Mack v. Civil Serv. Comm'n*, 817 A.2d 571, 575 (Pa. Cmwlth. 2003). The Board's authority is limited to adjusting the principal, interest, fees, and charges on amounts owed to the City or issuing a refund for monies incorrectly paid to the City. Philadelphia Code, §§ 19-1700-1706. Further, the Kanofskys have presented no justification for their claims for punitive damages, nor any evidence of a need for judicial oversight. As discussed above,

---

[4] In its brief, the City notes that the Board erroneously calculated the total amount due for the eight workers. The City states that the standard work day for abatement workers is 7.5 hours rather than the eight hours used in the Board's calculation. In light of the City's position on this issue, we will remand to the trial court to recalculate the total amount due, using the 7.5 hour work day for eight workers at a rate of $17.99 per hour.

the City has put forth meritorious arguments as to why it is entitled to the full amount of the charges as awarded by the Board.

Accordingly, for the reasons set forth above, the order of the trial court is affirmed in part and vacated in part, and we remand the matter to the trial court to recalculate the total amount due consistent with this opinion.


_____
P. KEVIN BROBSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jacob Daniel Kanofsky and : 
Alvin S. Kanofsky, : 
                 Appellants : 
           : 
          v. : No. 2740 C.D. 2015
               : No. 2759 C.D. 2015
Tax Review Board : 

## O R D E R

AND NOW, this 5th day of January, 2017, the order of the Court of Common Pleas of Philadelphia County (trial court) is hereby AFFIRMED in part and VACATED in part. The matter is REMANDED to the trial court to recalculate the total amount due in accordance with the attached opinion.

Jurisdiction relinquished.

 

                              _____
                              P. KEVIN BROBSON, Judge