IN THE COMMONWEALTH COURT OF PENNSYLVANIA

ChildFirst Services, Inc.,           :
                    Petitioner       :
                                     :
        v.                           :
                                     :
Department of Human Services,        :      No. 681 C.D. 2021
                    Respondent       :      Submitted: March 7, 2022


BEFORE:    HONORABLE ANNE E. COVEY, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                                  FILED:  March 29, 2022


        ChildFirst Services, Inc. (ChildFirst) petitions this Court for review of
the Department of Human Services (DHS), Bureau of Hearings and Appeals' (BHA)
June 7, 2021 order adopting the Administrative Law Judge's (ALJ) April 23, 2021
adjudication and recommendation (Recommendation) that granted DHS's Motion to
Dismiss (Motion).  There are three issues for this Court's review: (1) whether the
BHA's determination that it lacks authority to award monetary damages as a remedy
for an alleged breach of a settlement agreement deprived ChildFirst of its
constitutional right to procedural due process; (2) whether the BHA's determination
that it lacks authority to grant injunctive relief for DHS's alleged disparate treatment
of ChildFirst as compared to similarly situated, non-minority owned programs
deprived ChildFirst of its constitutional right to equal protection; and (3) whether
the BHA erred by concluding that the ALJ and the BHA lacked the power to award
damages or grant an injunction.  After review, this Court affirms.

        ChildFirst is a non-profit corporation that operates multiple licensed
child residential facilities, including Williams House and Glenn Clark House.  Prior

to April 14, 2016, ChildFirst filed applications with DHS to operate two additional child residential facilities known as Empowerment House and Danken House. On April 14, 2016, DHS revoked the licenses for Williams House and Glenn Clark House (Revocation Decisions). On May 4, 2016, DHS denied ChildFirst's applications to operate Empowerment House and Danken House (Application Decisions). ChildFirst appealed from the Revocation Decisions and the Application Decisions to the BHA.

On December 18, 2017, DHS and ChildFirst entered into a settlement agreement (Agreement) pertaining to the Revocation Decisions and the Application Decisions. The Agreement provided that DHS would promptly process ChildFirst's Empowerment House and Danken House applications, and would issue provisional licenses for Williams House and Glenn Clark House within 15 days. The Agreement also stated that, within 30 days, DHS would notify all providers, referral sources, and stakeholders involved in making placement decisions for children that DHS issued provisional licenses for Williams House and Glenn Clark House. Finally, paragraph 18 of the Agreement specified that "[t]he BHA shall have exclusive original jurisdiction, subject to appellate judicial review of its [o]rder, over any dispute that may arise with respect to the interpretation, application or enforcement of the terms of this Agreement." Reproduced Record (R.R.) at 32a. Although DHS issued provisional licenses to Glenn Clark House and Williams House, it did not process the Empowerment House and Danken House applications, or issue the corrective notices to stakeholders regarding Williams House and Glenn Clark House.

On March 15, 2019, the Northeast Regional Director of DHS's Office of Children, Youth and Families, Jacqulyn Maddon (Maddon), informed ChildFirst that DHS would not be renewing the Williams House and Glenn Clark House licenses. On March 18, 2019, DHS removed all children from those facilities.

ChildFirst appealed from these and other license refusals to the BHA and a hearing was held on November 12, 2019. Although the hearing did not involve the Empowerment House and Danken House licenses, ChildFirst raised DHS's failure to process the Empowerment House and Danken House applications.[1] At the hearing, the BHA ordered DHS to issue all of the licenses for all of the facilities including Empowerment House and Danken House.

On December 13, 2019, DHS issued licenses for Empowerment House and Danken House. On June 22, 2020, ChildFirst filed a Complaint for Violation of Settlement Agreement (Complaint) with the BHA. On July 2, 2020, the BHA issued a Rule to Show Cause why the Complaint should not be dismissed because it was unsigned, and notified ChildFirst: "If [ChildFirst] wishes to pursue an appeal of this matter, [ChildFirst] must submit a written request for hearing, with signature, to the [BHA] within **thirty (30) days** of the mailing date of this [o]rder." R.R. at 62a.

On July 15, 2020, ChildFirst filed an original, signed copy of the Complaint, retitled "Request for Hearing Regarding Breach of 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 Settlement Agreement[.]" R.R. at 64a-77a. In the Complaint, ChildFirst alleged that, at Maddon's direction, DHS breached the Agreement by delaying its issuance of provisional licenses to Empowerment House and Danken House, and failed to inform providers, referral sources, and stakeholders that provisional licenses were issued for Williams House and Glenn Clark House. ChildFirst averred that Maddon's conduct was motivated by racial animus, and demanded $2,780,140.00 in damages.[2]

---

[1] In its brief, DHS characterizes its failure to process the Empowerment House and Danken House applications as an "oversight" brought to its attention at the November 12, 2019 hearing. DHS Br. at 4. DHS contends that was the first time ChildFirst raised that issue. *See id*.

[2] At a pre-hearing conference on October 14, 2020, ChildFirst's counsel represented that ChildFirst is seeking monetary damages due to DHS's delay in licensing Empowerment House and Danken House, and an injunction to stop DHS's disparate treatment of ChildFirst. Notwithstanding, ChildFirst's Complaint does not request injunctive relief.

3

On September 16, 2020, DHS issued the corrective notices to stakeholders that it issued the first provisional licenses to Williams House and Glenn Clark House. On October 5, 2020, DHS filed the Motion, contending therein that sovereign immunity barred ChildFirst's claims against DHS and, even if sovereign immunity did not bar ChildFirst's claims, the BHA lacked subject matter jurisdiction over the breach of contract claim for monetary damages.

On October 13, 2020, ChildFirst filed its response to the Motion, reasoning that the Commonwealth of Pennsylvania (Commonwealth) has waived sovereign immunity for breach of contract claims. Further, ChildFirst asserted that, since the applicable General Rules of Administrative Practice and Procedure (GRAPP)[3] empower ALJs to recommend "the appropriate regulation, order, sanction, relief, or denial thereof[,]" the ALJ was authorized to award money damages. Section 35.205 of GRAPP, 1 Pa. Code § 35.205.[4]

On April 23, 2021, the ALJ issued the Recommendation, concluding that the BHA should grant the Motion. The ALJ reasoned:

> In [its] [C]omplaint, [ChildFirst] alleges [DHS] breached the Agreement by failing to promptly process [ChildFirst]'s applications for Empowerment House and Danken House[,] as [DHS] did not issue provisional licenses for Empowerment House and Danken House until

---

[3] Title 1 Pa. Code, Part II, Chapters 31-35, 1 Pa. Code §§ 31.1-35.251. "[GRAPP] appl[ies] when agencies hold a hearing, unless the agency adopted alternate procedures." *KC Equities v. Dep't of Pub. Welfare*, 95 A.3d 918, 932 (Pa. Cmwlth. 2014).

[4] Section 35.205 of GRAPP specifies:

> Proposed reports shall include a statement of (1) findings and conclusions, as well as the reasons or basis therefor, upon all the material issues of fact, law, or discretion presented on the record, and (2) **the appropriate regulation**, **order**, **sanction**, **relief**, **or denial thereof**. There shall be stated all facts officially noticed under [Section] 35.173 [of GRAPP] (relating to official notice of facts), relied upon in the decision.

1 Pa. Code § 35.205 (emphasis added).

two years later on December 13, 2019. [ChildFirst] further alleges [DHS] failed to inform providers, referral sources, and stakeholders involved in making placement decisions for children that provisional licenses were issued for Williams House and Glenn Clark House. Per the Agreement, the [BHA] can interpret whether [DHS] "promptly" processed [ChildFirst]'s applications for Empowerment House and Danken House, and the [BHA] can determine whether [DHS] failed to inform providers, referral sources, and stakeholders that provisional licenses were issued for Williams House and Glenn Clark House, and if necessary, issue an order directing [DHS] to comply with the terms of the Agreement.

However, [ChildFirst] is not disputing the terms of the Agreement, nor is [ChildFirst] seeking enforcement of the terms of the Agreement. Rather, [ChildFirst] is seeking monetary damages in the amount of $2,780,140.00. The Agreement however does not include any provisions regarding monetary damages. Since the [BHA]'s jurisdiction is limited to the interpretation, application, and enforcement of the terms of the Agreement, and the Agreement does not contain any provisions for damages, the [BHA] does not have jurisdiction regarding monetary damages for [ChildFirst].

At a pre-hearing conference on October 14, 2020, [ChildFirst]'s counsel stated that [ChildFirst] is also seeking an injunction to stop the disparate treatment of [ChildFirst] as compared to other facilities. Again[,] however, the [BHA]'s jurisdiction is limited to the interpretation, application, and enforcement of the Agreement. Thus, the [BHA] lacks authority to issue such an injunction.

Certified Record (C.R.) at 125-126 (footnote omitted). On June 7, 2021, the BHA adopted the Recommendation in its entirety. ChildFirst appealed to this Court.[5]

---

[5] "Our scope of review in an appeal of an adjudication of [DHS] is limited to determining whether constitutional rights were violated, whether an error of law was committed or whether necessary findings of fact were supported by substantial evidence." *Lil Shining Stars, Inc. v. Dep't of Hum. Servs.*, 140 A.3d 83, 92 n.5 (Pa. Cmwlth. 2016).

5

ChildFirst first argues that the BHA violated its procedural due process rights by depriving it of a meaningful remedy for DHS's alleged breach of the Agreement.

The Pennsylvania Supreme Court has recognized:

> *Ubi jus, ibi remedium* translates to: "Where there is a right, there is a remedy." B[lack's] L[aw] D[ictionary] 1520 (11th ed. 2019). The right to a remedy is, itself, a right protected by due process. *See, e.g.*, *United States v. Loughrey*, 172 U.S. 206, 232 . . . (1898) ("The maxim, '*Ubi jus, ibi remedium*,' lies at the very foundation of all systems of law."); *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 163 . . . (1803) ("**[I]t is a general and indisputable rule**, **that where there is a legal right**, **there is also a legal remedy by suit or action at law**, **whenever that right is invaded**. . . . [F]or it is a settled and invariable principle in the laws of England, that every right, when withheld, must have a remedy, and every injury its proper redress." (quoting Blackstone's Commentaries)). The right to a remedy is a core component of ordered liberty. *Id*.

*Commonwealth v. Koehler*, 229 A.3d 915, 933 n.10 (Pa. 2020) (emphasis added).

> The basic elements of procedural due process are adequate notice, the opportunity to be heard, and the chance to defend oneself before a fair and impartial tribunal having jurisdiction over the case. A due process claim requires a two-part analysis: (1) whether there is a life, liberty, or property interest with which the state has interfered; and (2) whether the procedures attendant to that deprivation were constitutionally sufficient.

*Fraternal Ord. of Police Lodge No. 5, by McNesby v. City of Phila.*, 267 A.3d 531, 545-46 (Pa. Cmwlth. 2021) (citations omitted). It is well settled that, when the state deprives a person of a constitutionally protected interest, it must provide him or her with a "meaningful opportunity to be heard." *LaChance v. Erickson*, 522 U.S. 262, 266 (1998). An opportunity to be heard is "meaningful," if the person is provided with: (1) "a fair opportunity to challenge the accuracy and legal validity of the

6

[deprivation,]" *McKesson Corp. v. Division of Alcoholic Beverages & Tobacco, Department of Business Regulation of Florida*, 496 U.S. 18, 39 (1990); and (2) a "clear and certain remedy." *Id*. (quoting *Atchison, Topeka, & Santa Fe Ry. Co. v. O'Connor*, 223 U.S. 280, 285 (1912)).

ChildFirst argues that it possessed a contractual right under the Agreement, i.e., a property interest, to have the Empowerment House and Danken House applications processed promptly, and DHS's failure to process its applications for almost two years prevented ChildFirst from operating the facilities and deprived it of revenues that it could have earned therefrom. ChildFirst reasons that because the Agreement vests exclusive jurisdiction in the BHA over disputes arising from the Agreement, the BHA must have jurisdiction over the breach thereof and accompanying damages, and the BHA's conclusion otherwise unconstitutionally deprived it of a meaningful remedy.

DHS responds that it is unclear whether the Agreement created a property interest in ChildFirst, given that it did not guarantee the licenses would be *issued*, but only that they would be promptly *processed*. Further, the BHA asserts that the Agreement did not contemplate monetary damages for breach but, rather, specific performance, which ChildFirst declined to pursue for more than two years. Accordingly, DHS claims that the BHA's dismissal did not deprive ChildFirst of a meaningful remedy.

The law is well established that "[a]n individual has a property interest where he has an enforceable expectation under statute or contract." *Barrett v. Ross Twp. Civ. Serv. Comm'n*, 55 A.3d 550, 556 (Pa. Cmwlth. 2012). Here, the Agreement provides, in relevant part:

> 11. [DHS] shall promptly process the applications submitted for the Child Residential and Day Treatment program for Empowerment House . . . and Danken House
> . . . .

7

. . . .

> 13. Within fifteen (15) days of the effective date of this Agreement, [DHS] will issue first provisional licenses for a period of six (6) months to ChildFirst regarding both Glenn Clark House and Williams House, effective on the date of this Agreement.
>
> 14. . . . . Within thirty (30) days after the effective date of this Agreement, [DHS] will issue corrective notices to all recipients indicating that the appeal has been settled and provisional licenses were issued.

R.R. at 31a. These settlement terms constituted DHS's obligations under the contract, in exchange for which ChildFirst agreed to be bound to its obligations. Because ChildFirst had an enforceable expectation that DHS would perform its obligations under the settlement as negotiated, ChildFirst had a cognizable property interest therein.[6]

ChildFirst argues that it lost revenue due to DHS's breach of the Agreement, because ChildFirst was unable to operate Empowerment House and Danken House for almost two years. ChildFirst contends that the BHA's alleged lack of authority to grant monetary damages deprives ChildFirst of a meaningful remedy for its monetary losses. However, ChildFirst's assertion ignores that ChildFirst had other remedies under the Agreement that it did not pursue. Specifically, it did not challenge DHS's inaction before the BHA, as authorized by paragraph 18 of the Agreement, and request that the BHA order DHS to comply with the Agreement. Thus, ChildFirst may not now claim that it is without a remedy because it failed to exercise its rights under the Agreement at the appropriate time.

---

[6] DHS cites *KC Equities* for the principle that ChildFirst's contractual right does not include the right to actually receive the certificates of compliance but, rather, to have the applications processed promptly. Nonetheless, DHS admits that "[f]rom December 18, 2017 until November 12, 2019, the applications for Empowerment House and Danken House **were not processed** and the corrective notices to stakeholders with respect to Williams House and Glenn Clark House were not issued." DHS Br. at 4 (emphasis added). However, DHS claims that, during that time period, ChildFirst never requested that the BHA enforce the Agreement's terms.

Accordingly, the BHA's dismissal of its damages request did not unconstitutionally deprive ChildFirst of a meaningful remedy.[7]

ChildFirst next contends that the BHA violated its rights under the Equal Protection Clause of the Fourteenth Amendment to the United States (U.S.) Constitution[8] by dismissing its request to enjoin DHS from engaging in alleged racial discrimination.

Importantly, ChildFirst's Complaint seeks only monetary damages, and does not include a request for injunctive relief. As described in the Recommendation, ChildFirst informed the ALJ "[a]t a pre-hearing conference on October 14, 2020," that it was "also seeking an injunction to stop the [alleged] disparate treatment of [ChildFirst] as compared to other facilities." C.R. at 126. Notably, following the pre-hearing conference, ChildFirst did not amend its Complaint to include a request for injunctive relief, nor did it file a written motion seeking such relief, or address the legal criteria required for an injunction.

Section 35.17 of GRAPP provides:

> Petitions for relief under a statute or other authority delegated to an agency shall be in writing, shall state clearly and concisely the grounds of interest of the petitioner in the subject matter, the facts relied upon **and**

---

[7] ChildFirst cites *General Motors Corp.* (*GMC*) *v. Commonwealth*, 222 A.3d 454 (Pa. Cmwlth. 2019), *rev'd in part*, *aff'd in part*, 265 A.3d 353 (Pa. 2021), to support its argument that it was denied a "meaningful remedy." ChildFirst Br. at 12. Therein, GMC petitioned for a refund of corporate net income taxes in excess of a statutory cap on the amount of loss a corporation could carry over from prior years. The parties agreed that the cap violated the Pennsylvania Constitution, but disagreed on the remedy.

Unlike *GMC*, which addressed a remedy for taxes unconstitutionally collected pursuant to a statute, here, ChildFirst argues that the Agreement, which **it negotiated and executed**, did not provide it with a meaningful remedy, despite that it afforded ChildFirst the opportunity to pursue before the BHA "any dispute . . . with respect to the interpretation, application or enforcement of the terms of th[e] Agreement." R.R. at 32a. ChildFirst's failure for two years to pursue a remedy to require DHS to adhere to the Agreement strongly undermines its argument that the BHA's dismissal of its action seeking damages deprived it of a remedy.

[8] U.S. Const. amend. XIV.

9

**the relief sought**, **and shall cite by appropriate reference the statutory provision or other authority relied upon for relief**.

1 Pa. Code § 35.17 (emphasis added).

Similar to Section 35.17 of GRAPP, Pennsylvania Rule of Civil Procedure (Rule) 1021(a) requires that "[a]ny pleading demanding relief shall specify the relief sought." Pa.R.Civ.P. 1021(a). In *Department of Public Welfare v. Gant*, 142 A.3d 964 (Pa. Cmwlth. 2016), this Court held that the appellant had not received sufficient notice that the Department of Public Welfare (DPW), now DHS, sought injunctive relief. Citing to Rule 1021(a), the *Gant* Court emphasized that a pleading demanding relief must specify the relief sought, and further explained:

> "The party seeking the injunction must establish that[:] (1) the right to relief is clear[;] (2) there is an urgent necessity to avoid an injury which cannot be compensated for by damages[;] **and** (3) greater injury will result in refusing rather than granting the relief requested." *Big Bass Lake Cmty. Ass'n v. Warren*, 23 A.3d 619, 626 (Pa. Cmwlth. 2011) (emphasis added). Each of the above requirements must be satisfied before an injunction will be ordered. *Id.* [DPW's p]etition does not request or even reference injunctive relief or the legal criteria necessary to establish a right thereto.

*Gant*, 142 A.3d at 992 (underline emphasis added). Here, ChildFirst's Complaint "does not request or even reference injunctive relief or the legal criteria necessary to establish a right thereto." *Id.*; *see* R.R. at 65a-77a. Accordingly, because ChildFirst never requested or referenced such relief in its pleadings, the BHA did not violate ChildFirst's equal protection rights when it dismissed ChildFirst's injunctive relief request.

Finally, ChildFirst argues that the BHA committed an error of law when it concluded that it could not award damages for breach of the Agreement or order injunctive relief because it only has the authority to interpret, apply, and enforce the

10

Agreement's express terms. ChildFirst asserts that the BHA's jurisdiction is not so limited, and its authority includes "any dispute arising out of the Agreement[.]" ChildFirst Br. at 14 (bold emphasis omitted).

Specifically, ChildFirst contends that Section 35.205 of GRAPP authorizes such relief, in that it "gives [ALJs] the power to recommend 'the appropriate regulation, order, sanction, relief, or denial thereof.'" ChildFirst Br. at 15 (quoting Section 35.205 of GRAPP). Based thereon, ChildFirst declares that

> [b]ecause [GRAPP] permit[s] the granting of any type of appropriate relief and the award of monetary damages is not prohibited by any relevant law, regulation or [o]rder, the BHA committed an error of law when it determined that it is not authorized to make an award of monetary damages, if it finds that a monetary award is "appropriate relief" for [DHS's] breach of its obligations under the [] Agreement, or to grant injunctive relief if it finds that injunctive relief is "appropriate relief" for [DHS's] disparate treatment of ChildFirst as compared to similarly situated [w]hite-owned programs.

ChildFirst Br. at 15.

DHS responds that Section 35.187 of GRAPP permits the BHA to act only in a manner consistent with DHS's statutory and regulatory authority.[9] DHS correctly states:

---

[9] Section 35.187 of GRAPP states:

> Presiding officers designated by the agency head to preside at hearings shall have the authority, **within the powers and subject to the regulations of the agency**, as follows:
>
> > (1) To regulate the course of hearings, including the scheduling thereof, subject to the approval of the agency head, and the recessing, reconvening, and the adjournment thereof, unless otherwise provided by the agency head, as provided in [Section] 35.102(b) [of GRAPP] (relating to hearing calendar).
> >
> > . . . .
> >
> > (6) To hold appropriate conferences before or during hearings.

11

Article X of the Human Services Code[10] speaks to [DHS's] authority to license and regulate child residential treatment facilities within the Commonwealth. [*See*] 62 P.S. §[§] 1001[-1088]. Article X [of the Human Services Code] does not reference [the] BHA's ability to issue injunctions in licensing matters. Instead, it speaks only to the authority of **courts of common pleas** to issue injunctions to prevent the operation of a facility when the facility is operating without a license or for a facility's violation of [DHS's] regulations. *See* [Sections 1052-1056 of the Human Services Code,] 62 P.S. §§ 1052-1056. [DHS] can seek this injunctive relief from the courts both when a facility is pursuing an administrative appeal or when a facility is not pursuing an administrative appeal. *See id*.

This is the only reference to injunctive relief in Article X [of the Human Services Code] and [it] does not bestow [the] BHA with the ability to award injunctive relief to ChildFirst in this case. With respect to Article X [of the Human Services Code], the General Assembly determined the only appropriate forum for equitable relief in these situations is the courts of common pleas.

DHS Br. at 18-19 (footnote omitted).

Even assuming, *arguendo*, that ChildFirst had properly requested injunctive relief, the BHA lacked the jurisdiction to grant such relief in this matter.

---

(7) To dispose of procedural matters but not, before their proposed report, if any, to dispose of motions made during hearings to dismiss proceedings or other motions which involve final determination of proceedings.

. . . .

(9) To submit their proposed reports in accordance with [Section] 35.202 [of GRAPP] (relating to proceedings in which proposed reports are prepared).

(10) To take other action necessary or appropriate to the discharge of the duties vested in them, **consistent with the statutory or other authorities under which the agency functions and with the regulations and policies of the agency**.

1 Pa. Code § 35.187 (emphasis added).

[10] Act of June 13, 1967, P.L. 31, art. 10, *as amended*, 62 P.S. §§ 1001-1088.

The Recommendation states that, "[a]t a pre-hearing conference on October 14, 2020, [ChildFirst's] counsel acknowledged that all actions required by the terms of the Agreement have been completed." C.R. at 125. Specifically, ChildFirst's counsel admitted: "I believe that now[,] everything that was required by that [Agreement] has been done[,] albeit, very, very, very belatedly." R.R. at 155a. Importantly, the Agreement described the BHA's jurisdiction as those "dispute[s] . . . aris[ing] with respect to the interpretation, application or enforcement of the terms of th[e] Agreement[,]" R.R. at 32a, and DHS's alleged disparate treatment of ChildFirst is not such a dispute because injunctive relief can only prevent or mandate current/future action, and any such alleged disparate treatment is unrelated to the Agreement's terms which "have been completed." C.R. at 125. An injunction to prevent future disparate treatment is not a "dispute . . . aris[ing] with respect to the interpretation, application or enforcement of the terms of th[e] Agreement." R.R. at 32a.

Further, the Pennsylvania Supreme Court has explained that "only **courts** of . . . the Commonwealth" (and not administrative agencies) "have the power to grant declaratory judgment and injunctive relief pursuant to the Declaratory Judgment[s] Act, 42 Pa.C.S. §[§] 7531[-7541.]" *Empire Sanitary Landfill, Inc. v. Dep't of Env't Res.*, 684 A.2d 1047, 1055 (Pa. 1996) (emphasis added). For these reasons, the BHA did not have jurisdiction to order injunctive relief in this case.

In contrast to ChildFirst's request for injunctive relief, ChildFirst's money damages claim reflects ChildFirst's alleged loss of revenue arising from DHS's alleged failure to adhere to the Agreement's directive to promptly process the Danken House and Empowerment House applications.[11] It is a dispute over DHS's alleged failure to issue corrective notices to all providers, referral sources,

---

[11] The Pennsylvania Supreme Court has noted that "'lost profits' are a type of consequential damage[.]" *AM/PM Franchise Ass'n v. Atl. Richfield Co.*, 584 A.2d 915, 921 n.8 (Pa. 1990).

and stakeholders involved in making placement decisions for children that provisional licenses were issued for Williams House and Glenn Clark House. Nonetheless, "while courts have certain inherent powers, the same is not true of administrative agencies, whose authority is limited to the powers granted by legislative enactment." *Mack v. Civ. Serv. Comm'n* (*City of Phila.*), 817 A.2d 571, 574 (Pa. Cmwlth. 2003). This Court has emphasized that "even when particular administrative agencies have been found authorized to enforce settlements entered in cases before them, **that power has not included the authority to award compensatory damages**[12] **for breach of the settlement agreement**." *Id.* at 575 (emphasis added). ChildFirst has not identified any authority explicitly granting the BHA power to award compensatory damages. Absent any statutory authority permitting such, this Court must conclude that the BHA's "exclusive original jurisdiction . . . over any dispute . . . with respect to the interpretation, application or enforcement of the terms of th[e] Agreement[,]" R.R. at 32a, does not include "the authority to award compensatory damages for breach of the [Agreement]." *Mack*, 817 A.2d at 575.

For all of the above reasons, the BHA's order is affirmed.

_____
ANNE E. COVEY, Judge

Judge Dumas did not participate in the decision in this case.

---

[12] "Compensatory damages consist of both 'general' and 'consequential' or 'special' damages. While general damages compensate the injured party for the immediate injury or loss sustained, consequential damages are damages that flow from the consequences of the direct injury." *The Birth Ctr. v. The St. Paul Cos., Inc.*, 787 A.2d 376, 390 n.1 (Pa. 2001) (Nigro J., concurring).

14

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

ChildFirst Services, Inc.,            :
                      Petitioner            :
                                   :
          v.            :
                                   :
Department of Human Services,            :    No. 681 C.D. 2021
                    Respondent            :

## O R D E R

AND NOW, this 29th day of March, 2022, the Department of Human Services, Bureau of Hearings and Appeals' June 7, 2021 order is affirmed.

_____
ANNE E. COVEY, Judge